### JIM WILSON v. THE STATE.

No. 3773.    Decided May 6, 1908.

**Murder—Newly Discovered Evidence—New Trial.**

Where upon trial for murder, the evidence showed a poisoning by means of carbolic acid, and the theory of the State was that the poison was administered to deceased by defendant, and the motion for new trial setting up newly discovered evidence showed the want of knowledge on the part of the defendant of such testimony, that the same was material in showing that the deceased had made suicidal attempts with carbolic acid, etc., and the affidavit of the main State's witness attached to said motion showed that she was coerced to give the testimony against the defendant on the trial, and that she believed that the defendant had not killed deceased, a new trial should have been awarded.

Appeal from the District Court of Tarrant.    Tried below before the Hon. Irby Dunklin.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

The opinion states the case.

*Parker & Parker,* for appellant.—On question of newly discovered evidence: Roy v. State, 24 Texas Crim. App., 369; Ford v. State, 41 Texas Crim. Rep., 1.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was charged with and convicted of the murder of his wife by administering carbolic acid.

There are several questions suggested for revision, only one of which will be discussed, to wit: motion for a new trial on account of newly discovered testimony. The principal testimony for the State was introduced through the witnesses, Mary McKelvey and a negro woman whose name is Mattie Langston. Mary McKelvey was a girl about 16 years of age, the testimony indicating that she was the illegitimate child of the deceased. The death of the deceased occurred about the first of October, 1907, at the family residence in the City of Fort Worth. The parties had previously lived in Temple, but in the month of April, 1907, moved to Fort Worth and were there married. So far as the facts are concerned, there had been no previous trouble, and no motive for the crime is shown. Appellant was engaged in the business of hauling and delivering water to customers. He was going to work early in the morning; his wife had been complaining, and on the morning of her death was still feeling unwell. Appellant left the house to start his water wagon, stating that he would soon return, and, according to the testimony, did return about 7:30 a. m. and was about the house, perhaps in the front room, until about 11:30 a. m. Mary McKelvey states that about 11:30 she heard a noise in the room where defendant and deceased were, and went to one of the doors and found a chair against it; pushed it away, entered and found deceased lying on the floor and defendant by her with his arm under her head. She further states that he put his fingers in her mouth. She did not see any carbolic acid but smelled it. Deceased spoke to the witness, stating that she was bound to die. This seems to have been the only remark she made. A few moments afterwards she died. An examination of the body disclosed the fact that she had taken carbolic acid.

In regard to the motion for a new trial and the alleged newly discovered testimony, the condensed statement will disclose that diligence was sufficient, and some of the testimony very material. It also shows a want of knowledge on the part of appellant of much of the testimony alleged to be newly discovered. Without going into a detailed statement of the facts bearing upon diligence, we simply mention enough of the testimony to show its materiality.

The theory of the State was, the poison was administered by appel-

lant either by pouring it in her mouth or by forcing her to take it. The affidavit of Burt is to the effect that deceased was addicted to the use of intoxicants and some kind of drug which she said was morphine; that she used it to "kill her troubles"; and it may be further stated, in this connection, that the evidence on the trial disclosed that she had been a woman of loose virtue; that these troubles affected her mind, and at times she seemed to be gloomy and despondent, if not unbalanced mentally; that this affiant had seen her in possession of a two-ounce bottle of carbolic acid, which she said she was going to take with suicidal intent. He took this bottle from her and still had it in his possession. By the affidavits of parties living at Temple, where Burt resided, he is shown to be a credible person. The affidavit of Annie Middleton is practically the same, and further shows threats by deceased to take her life by using carbolic acid, made at Temple just before her removal to Fort Worth. There are supporting affidavits as to her reliability for truth and veracity. Louise Ball filed an affidavit to the effect that on two occasions deceased made attempts to take her life, first, by using what the witness terms antiseptic tablets, and, second, by carbolic acid. By Mrs. Simpson it is shown that deceased, while at the affiant's house in the afternoon of the day preceding her death, talked in a peculiar way, and caused her to suspect that she would not be living the next day. It seems that the deceased had used the telephone at Mrs. Simpson's and after using it, remarked that she would pay for it the next day if she was living. By the affidavit of Mrs. Erwin it is stated that Mrs. Wilson had carbolic acid in her possession, and kept it over the kitchen window. Miss Rena Johnson's affidavit is to the effect that she saw the deceased at the kitchen window a few minutes before the alarm was given; that deceased was in her nightgown and raised her hand towards the top of the kitchen window, this being the only window in the kitchen. The affidavit of Mary McKelvey, the main prosecuting witness, impugns seriously her testimony by her affidavit as given on the trial, as well as the testimony of the negro woman, Mattie Langston. These were the two main witnesses for the State on the trial. The affidavits of appellant and the jailor are to the effect that Mary McKelvey, on December 16, 1907, came to the county jail to visit appellant, and she told appellant she would do anything that she could to help him, and said that she had been forced by the brothers of deceased to testify as she did on his trial. Subsequently, this witness went to the office of appellant's attorneys and gave the affidavit found attached to the motion for a new trial, among other things, stating as follows: "I know of no reason why Mr. Wilson would want to kill Maude, and I don't believe that he did kill her or that he had anything to do with it. I would not have testified as I did if it had not been for my brothers. I make this statement freely and voluntarily because I believe it is right to do so." Mainly upon this witness' testimony the conviction was secured.

As before stated, the theory of the prosecution was that appellant

compelled deceased either by pouring the carbolic acid down her throat or by forcing her to take it, thereby bringing about her death. The case was one of circumstantial evidence. Nobody was in the room at the time the acid was taken, and the evidence does show that there was no struggle about the bed or the room so far as the physical facts are concerned, and it utterly fails to show and rather excludes the idea that there were any bruises or anything about the person of deceased indicating that force had been used. These affidavits setting up the newly discovered testimony disclose some very important evidence. Appellant had been married to deceased but a few months, having married her in Fort Worth after her removal from Temple to Fort Worth the previous April, the death having occurred in October, after changing residence from Temple to Fort Worth. Without further summing up this evidence or commenting on its weight or force, as it might apply to the case, we are of opinion that it was of decided materiality, and would present the case to the jury in quite a different aspect from what was done under the testimony developed on the trial. So believing, we are of opinion that a new trial should have been awarded. The court below having failed to do so, this court will reverse the judgment and remand it for another trial, and it is accordingly so ordered.

*Reversed and remanded.*